Good afternoon, Your Honors. Gilbert Gaynor. I might add that Mr. Eliasberg, my co-counsel, is present in the courtroom, as are Ms. Jennifer Rogers and Ms. Penny Little, the prospective plaintiffs. Counsel, help me on something. Let me lay out for you where I currently tentatively am, and you educate me on it. Certainly. It looks to me like the district judge violated the mandate. Correct. And you prevail on that question. But it looks to me as though you don't get all the way around the basis on it, because the case has subsequently become moot for another reason. And that is Lawson, the plaintiff, is gone. She won't be organizing any demonstrations that need the protection of the lawsuit. And the Campus Labor Action Coalition is no longer organizing any such demonstrations. The motion to substitute rule doesn't really apply to these circumstances. It's just a different plaintiff altogether. There isn't any death or other such impossibility. And it looks to me as though what we should do is dismiss the appeal because the case is moot, but also vacate the judgment under Munsingware, because the mootness prevented it from ever being subjected to an appeal to test whether it was correct, which it probably wasn't. Where am I missing the boat? Under Rule 43, Your Honor, I think Rule 43 and the case law of this Court and the D.C. Circuit dictate a different result. The situation here is no different than if the First Amendment event at issue were a for-profit enterprise, such as the Renaissance Fair or another annual rule. Rule 43B, Your Honor. Rule 43, death of a party. Rather necessary. That doesn't apply. So you're under B, substitution for a reason other than death. That's right. And this Court and the D.C. Circuit have said the same thing. The substitution is appropriate when there is, quote, a transfer of interest in the company or property involved in the suit, unquote. So what is the company or property? It's the parade? Essentially, it's the events, the annual or in some cases perhaps more than annual event started by these organizers to protest economic injustice in the city of Santa Barbara and other social and political issues that they're concerned about. You're saying anybody who wants to protest injustice can just pop in? No, Your Honor. Not at all. Not even close, Your Honor. With all due respect. Look, what you're relying on is footnote 13 in Sable Communications, as far as I can tell. That's where you quoted the language from. That's correct. And now you quoted it without the context around it. It denies the motion to substitute, and it says substitution under Rule 43b is appropriate only where necessary, and necessary means that a party to the suit is unable to continue, such as where the party becomes incompetent or a transfer of interest in the company or property involved in the suit. That's exactly right. Well, it's not right with regard to the individuals. I mean, it seems to me that we can get the individual people off the table here, because I'm sorry. Your Honor, we'd be prepared to litigate this on the question of whether the People's Coalition is a successor to the Campus Labor Act. All right. So let's focus on that question. So let's set the individuals aside for the moment. All right. We can do that. That's fine. So with the – so how would you spin out the argument that it's a successor organization? Well, very easily. But just a minute. Does the Labor Coalition, whatever its exact name was, does it exist anymore? As I understand it, it's gone into a state of inactivity. Meaning what does that mean? Meaning that it was a registered student organization at UCSB, and it's not one anymore as far as I know. It's inactive. Whether it could be revived, I don't know. But I do know that the People's Coalition has taken over the organization of the annual march from the Campus Labor Action Coalition. Well, does it matter whether the Labor Coalition exists or doesn't exist? No, it doesn't. Because of incapacity? No. No, it really doesn't, because – If it existed and just decided it didn't care anymore. No. That's not what happened. What happened – and maybe this is some extra record facts here, because unfortunately we were never permitted to pass beyond the page. Well, there is another question, which is why this all showed up at this time when apparently all the events underlying it happened a couple years ago, i.e., the change of parties. Well, the change of – the substitution? Yes. What happened was that in 2001 and 2002, the Campus Labor Action Coalition was the organizer, the group that organized these events. The case has been pending here for a couple years, unfortunately. Yes. Let me answer the question, Your Honor, if I may. In 2002, they were the organizer. The People's Coalition was formed after that. In 2003, what happened was that the Campus Labor Action Coalition was a sponsor and an organizer of the event. The main organizer was the People's Coalition. It was not until October of 2004 that counsel became aware that the Campus Labor Action Coalition was no longer in existence. And the People's Coalition has taken over the entire role of the Campus Labor Action Coalition in the organization of this annual event. So that's how it happened, the no substitution motion. You know, I understand what a transfer of interest means when – if Southernville buys all of AT&T's stock. So let me spin over the law. Let me spin this up for a moment. Maybe with nonprofits, I could understand a transfer of interest if there's some instrument transferring the interest and if the treasury is transferred. I don't understand what it means when students lose interest in acting under the rubric of one organizational name and other people continue to have an interest in acting similarly under a different organization's name. Well, Your Honor, what happened was – and I'm trying to explain this as best I can. Perhaps I have not explained it clearly in my papers. The transfer of interest is that the Campus Labor Action Coalition transferred its interest in organizing this event. Did it have an actual right such as an agreement with the – No, it didn't. And that's probably the only distinction that we can make under Rule 43. That if they had incorporated themselves and had said we are Campus Labor Action Coalition Incorporated and we now transfer our interest into the People's Coalition Incorporated, that there would be no Rule 43 problem in this case. We would all presumably at least agree that Rule 43 – Well, that assumes you don't have an interest in an event or a parade. Pardon me? That assumes that there is something – Well, you can put on these – I mean, for example, there's the Renaissance Fair in California. And as far as I know, and I know it anecdotally, the ownership of that event has transferred over the years several times. This is a similar situation. They'll have documents for sure because there's money involved. We don't have documents. But then the question is, does Rule 43 penalize our clients because instead of being a for-profit corporation, they're an unincorporated association? There isn't any penalty involved. The penalty would be dismissal of the lawsuit, Your Honor. We would go back to – Now, the point you get out of the motion is at paragraph 5 of the Declaration of Jennifer Rogers, at this point, CLAC is no longer active, and its successor and interest is the People's Coalition. That's correct. That's all I can find. I don't know what successor and interest means. I don't even know if this is a non-profit. I don't know if it's a – It's an unincorporated association, Your Honor. It's recognized as all unincorporated associations are under California law. They don't have to do anything. They don't have to file any papers with the Secretary of State. They simply exist. They get together and they have legal standing on this issue. What interest could there be, then, that anyone would be a successor to? Pardon me? What interest could there be? The interest in holding the annual event. No, that just means I'm interested in something. No, no, it doesn't mean that. The interest, in a sense, that Rule 43b is talking about is something like if you had a property right, if you applied for a permit and then you wrote a letter to the city saying the name of the permittee should be changed to such and such, there are various ways you could have an interest, but it doesn't just mean we're both interested in peace. Well, maybe the real question for this Court is, how narrowly are we going to construe the sense of interest under Rule 43? If it's going to mean the paper must change hands, then we don't qualify. And we will have to dismiss it. Well, I gather there was some paper. But if it means, if it means, Your Honor, that the actual interest in holding the event continues, then I think we do qualify. I'm sorry, Judge, I did not mean to cut you off, but you're right. What's a playbook? A playbook is a document which essentially sets forth how one goes about organizing the event. You get the permits. You get the trucks. You do the advertising, et cetera, et cetera. It's essentially an organizational or administrative manual to go about organizing the next year's events. And that is, of course, a document that did change hands. Counsel, let me just jump across this argument just for a minute, because I think I certainly have some sympathy for the fact that you won up here before, and then the mandate issued, and then the district court judge, before letting you amend your complaint, just decided it was contrary to what this court had ruled two years ago. And I'm just wondering, if we somehow decide that in your favor on the motion, what would you do now? Would we go back and amend to address the 2005 parade, or insert your ---- Yes, we would. Yes, we would, preferably to a different district judge, one who will give us a fair hearing, who will actually not call this case moot when this Court has said it's not moot, and will address the merits, which is, after four years, what we're still asking for. So what if we were to ---- could we deal with the order that was before us, remand, let's say, to a different judge, and then let you litigate the mootness question that arises from the substitution issue, and the substitution issue at that junction? Would that make any ---- is that possible, or do we have to decide the mootness issue, or else we have no jurisdiction? The new mootness issue, as opposed to the old mootness issue. Well, Your Honor, one couldn't ---- certainly this Court has the power to remand it under any ---- Well, we could decline to rule on the motion to substitute and remand for failure to follow the mandate. That is certainly possible. And then you bring your motion to substitute in the district court. Because only if we rule on the motion to substitute do we perhaps deprive ourselves of jurisdiction. That's perhaps possible, Your Honor. And one other thing I'd like to mention is Judge Rehl didn't give us the opportunity to amend. He threw us out immediately. And let me make one other point related to that. We said in our papers in the trial court that we wanted to amend. We also said ---- Counsel, let me ask you about something that is on my mind here. Whether any papers were handed over, the one that we've discussed so far in the argument Judge Berzon mentioned, the playbook, the only mention I could find, and you'll tell me if there's another mention, is the declaration of Jennifer Rogers. What that says is CLAC agreed to hand off its playbook to future organizers. And as a result of this meeting, the People's Coalition was formed. I don't see language that says that the playbook was ever delivered to anyone. I believe it was, Your Honor. Is there language in the papers? Well, if it isn't in the Jennifer Rogers declaration, then there's no specific language to that. Well, no, Your Honor. It isn't. And it is ---- Okay. So what you're saying is there is no evidence before the Court that the playbook or any other papers were ever delivered from ---- I think we can infer from the Jennifer Rogers declaration that the playbook was delivered, Your Honor. I don't see why I should infer that. I mean, it's ---- Well, part of it is that this is a First Amendment case, Your Honor, that these are precious free speech rights. And we've been through four years of procedural purgatory. And that precious, I assume the lawyers write the affidavits and say all that they can say that will help the case. Your Honor, if I were prescient, I would have filed this case in State court. Good idea. It may be the ultimate fate of this Court. It depends on what this Court does. And maybe we should have filed in State court, although I think it's a very sad day for the State of civil rights and civil liberties in America when a First Amendment group brings a First Amendment case in Federal court and cannot get to the merits after four years. That would be, in my view, as a lawyer and a citizen, a tragic result. It's not that sad if you get to hold your parade every year without interference. Oh, yes, it is, Your Honor. They've had to comply with outrageous demands for insurance, which are unconstitutional. I think we've shown why in our briefs in this appeal and in the other appeal. They've had to pay thousands of dollars in fees. They have been, let me think of the correct phrase here, manipulated by the city officials who tell them that park reservations are available, and then they're not available, and then there are other times. They have definitely had to comply with unconstitutional conditions. Did you file a writ of mandate by any chance when Judge Reel refused to do? No, we didn't, Your Honor. Isn't this a classic case in which that would be available? In hindsight, perhaps we should have filed a writ of mandate. I wish I had done differently. Thank you, counsel. Thank you, Your Honor. Do we have questions for her? Do we have questions for her? Good afternoon. May it please the Court. Firstly, we do object, the city and the city defendants would object to the extra record of representations by counsel. There isn't anything in this record, for instance, as to paying thousands of dollars in fees. In fact, whomever it was that was demonstrating or marching in the past few years, in 2001, in 2002, 2003, and 2004, permits were issued and this event occurred,  was A, the mandate which was not followed, and B, the substitution of parties. And I'd like to talk a little bit about the second. Let's leave aside the individuals. Why isn't this situation sufficiently analogous to a transfer of interest to be subject to a substitution of parties? My understanding is, and I understand that Judge, or Judge Kleinfeld points out that it doesn't quite say that the playbook was handed over. But the, and maybe we need more development of the facts, but if, let us say that if what happened was that essentially one organization, which was the former sponsor, went out of existence and another one took over to run the same event in the same way in the future, why isn't that like a corporation selling a product, a patent? It was a patent case, for example. Why isn't it like a licensee of a patent? Well, number one, it just isn't. It's an associate, first of all, Your Honor, number one, there is no property interest owned or property owned by this organization or association. We, in fact, don't even have the facts which the Court just put in the hypothetical based on all we have, which is the declarations of these moving parties, these newcomers who would be new parties substituted. They, in fact, tell us in paragraph four of Ms. Little's declaration that the People's Coalition was formed in part to take over for the CLAC's activities. And elsewhere, Ms. Rogers and Ms. Little tell us that CLAC hasn't gone out of existence and counsel today just represented. It's not that it ceased to exist. It continues to exist. It doesn't choose to be the organizer and sponsor. Well, that's not what I was hearing. But there's another odd thing, too, which is that the two other parties have not come in here and said that they're dropping out. We have two parties who have come in, or three parties, said they want to be substituted for the other parties. But the other parties haven't shown up and said we want out. In fact, what we have is an attorney or attorneys, the ACLU of Southern California and Mr. Gaynor, representing ostensible people, Lawson and CLAC, who we now for the first time have learned aren't involved, weren't involved at all after 2002 and were being told by these two women, Little and Rogers, that they only got involved and were organizers with the People's Coalition from 2003 forward. So what we only have on this record is this plaintiff, CLAC and Lawson, they're not around anymore based on their attorney and the evidence offered under oath that the attorney presents to this court. So we do know that Ms. Lawson has moved and doesn't want to be here and isn't here. And we know that CLAC, which was this amorphous California association of students and teachers, no longer is interested in this event. We have the recent case of Southern Oregon barter fair where this court pointed out that if the barter fair, and I'd like to point this to Judge Berzon's argument. It said, this barter fair can be the question. It pointed out that if the barter fair, the barter fair's claim would have been moot if, in fact, it had gone out of business and didn't intend to have a license anymore. But because the barter fair was talking about in the future we want to be able to go have this fair and this state act is interfering, they alleged, then it wasn't moot. But this court pointed out that, in fact, if barter fair had gone out of business, wasn't seeking a license or wasn't seeking a permit and said so, it would be moot. Mootness is always an issue, and here it is an admission against interest of the attorneys bringing this case and these would-be substituted parties that they are not the people who brought this lawsuit, that they did not have any complaints or involvement in the 2001 event. And no one had any problem with the 2002 event in front of Judge Rea. Well, excuse me, but that isn't the representation of the plaintiffs. They have many problems with the 2002 event. True, they were able to hold it, but they weren't able to hold it in the manner that they wanted to hold it. Excuse me, Your Honor. What plaintiffs?   The only record plaintiffs. Counsel, this is really the problem I have, is that we're an appellate court, and we're not supposed to take evidence and make factual findings at this level. And it seems to me what this motion to substitute has done is put a lot of evidence in front of us about things that happened or didn't happen and so-called interests that may or may not exist. And I don't – perhaps this was another – perhaps this was a mistake, but it seems to me that we cannot make those evidentiary kinds of findings in the first instance, and that we may be required to send this back so that you can have a trial court decide if there's anything here or dismiss the case. Well, mootness is capable of being raised at any time in sua sponte, and this Court's ruling, Dittman v. California, agrees it can be raised on appeal. Here it's not being used defensively or offensively, if you will. We are dealing with a situation brought to us. The plaintiffs have brought a motion to substitute in which they admit that they don't exist and don't care about this lawsuit anymore. And these new parties whom the Alabama case, the Alabama Power case, which was cited by this Court in Sable Communication, they actually had a quote. Necessary is not when a party voluntarily decides to stop litigating. Our research has yielded no instance of a court permitting a non-party to substitute in an appeal or a petition for review from an appeal of agency action. Which case is that? This is Alabama Power, which is cited by and relied on by this Court in Sable Communication. Alabama Power is the D.C. Circuit, 1988, pointing out that this is just not allowed. This is not what Rule 43 means or intends. And on appeal, it is appropriate to dismiss for mootness when uncontradicted and we didn't solicit this. This is news to us. These people have admitted they don't exist, don't want the case, have stopped litigating, and they want to bring in these newcomers whom, again, I want to ‑‑ it's important to continue to remember this Court is not denying a remedy to these new parties if it in fact acknowledges the admissions made in the motion, implied by the attorney representing the plaintiffs, proffering this evidence that CLAC doesn't exist and Ms. Lawson has moved on and CLAC is not doing it. All this Court would be doing is dismissing the challenge to the hermits granted for the 2001 and 2002 parades. Nothing stops People's Coalition and Ms. Rogers and Ms. Little from bringing whatever lawsuits they want to bring for whatever they claim or don't claim for the 2003, 2004, and would-be 2005 events. We're still prepared and able, and this Court has jurisdiction ‑‑ not this Court, but the Court below. There are remedies for these people in court, but there's no need to create un‑‑ this case is no longer ripe. You've got admissions presented on this motion to show it's not a ripe controversy and that it has become moot because the parties have disappeared. And when a case no longer puts together a live controversy, 2001 and 2000 events are long gone. Well, yes, but that's because they weren't allowed to amend the complaints in the district court. We have a circular problem here. Part of the problem is that although this Court told Judge Reel to entertain an amendment, he refused to do it. Well, I've learned not to argue when I'm ‑‑ I sense it would be not availing to suggest to the courts why it's not an improper decision that Judge Reel made. I understand that the Court seems to be disagreeing, and I don't want to waste your time. But do remember, in March 2003, when the remand of this Court came down in December 2002 and didn't get actually delivered to the Court for the hearing for the spreading of the remand, we were in March 2003. And this Court's ruling had been she had intimated obliquely a desire to hold an event in 2002. Well, in March 2003, when Mr. Gaynor and Mr. Tokjai were standing in front of Judge Reel, these documents, the declarations, make clear that they no longer had clients, CLAC and Ms. Lawson. Ms. Lawson had moved on, CLAC had told them at the end of the 2002 event it was out, and the people applying for the 2003 permit that was discussed with the Court are these new parties. So, in fact, when Judge Reel was looking in March 2003 and heard that the 2002 event occurred, it was moot as to the 2002 event. It occurred. It had happened seven, eight, nine months earlier. And now we find out that as to the 2003 event that they were saying they intended to go get permits for, that it wasn't even the they who are the plaintiffs. Isn't this classically one of those cases that is capable of repetition without having judicial review or whatever that phrase is? That's what's happening. Every year you have this parade, and then you're bouncing back and forth between the district court and the court of appeal, and you can't get the merits heard because of that. So we're — that's the exception to mootness. It's a rare — it's a real exception. It's an exceptional circumstance to look at the capable of repetition, and that's why it's well worth keeping in the front that the harm here, there's no harm or prejudice to these would-be new people, the People's Coalition, whoever that group is, and Ms. Rogers and Ms. Little. When and if they want to challenge what happened in 204 or 205, they can. They — nothing stops them from filing a lawsuit in State or Federal court. Kagan. One of the realities here is that what we're dealing with, as I understand it, are student groups. Student groups, by definition, are going to turn over their personnel 100 percent within four years, who's in them. And so it's a fiction in any event. Even if the thing has the same name, it would still be completely different people, right? If the campus labor coalition still existed, it would be entirely different people no matter what. So therefore, the question is why it matters so extremely that the same parade is being run by a group of other students with a different name. That's what we have essentially. One reason it matters, Your Honors, is that each time, and even in this sparse record that we have for the 2001 and the 2002 events, it's clear that each time, and I can represent to the Court and even seek judicial notice of the permits that have been subsequently issued, they are different factually each time. The first, in 2001, they wanted to reserve a park and they wanted to have a major parade down a street. 2002, they didn't want to reserve a park. They didn't want the same parade. 2003, they went to a different park, to a county park. They didn't even want a city park in 2003. It's factual. If a plaintiff's attorney does what he said he was thinking about, filing it in State court or filing it again in Federal court and getting a different judge, then it won't evade review. They can get a review. We welcome review. We welcome defense of the merits, and we think under Thomas v. I don't actually see why this case isn't subject to a fairly quick preliminary injunction hearing if it comes to that, and mandamus action if the judge is just off the reservation. That's what happened. If it's just an ordinary dispute. That's what happened the first time, Your Honor. We brought the city defendants, brought a motion to dismiss. They brought a motion for preliminary injunction. Judge Real agreed with us that the facial challenge wasn't there and the as-applied wasn't there. It got appealed and it came back. They can continue to seek redress in new courts. It's also the fiction. Fictions are, well, they're wedded to the legal system. We have the fiction of a corporation that can cease to exist and reincorporate with new names and new shareholders. But we encourage and require under the law that these legal fictions be abided, because Corporation X ceases to exist today. That does matter. It's a legal fiction, but it does matter. And Corporation Y isn't necessarily going to be legally able to garner the rights or responsibilities of that former corporation. This is a far less – this is the most vague legal fiction, an association of people. Nothing stops Ms. Littles and Ms. Little and Rogers from filing to challenge what has happened if they do. Our concern is the statutes of limitations have run. Administrative relief has run. Never in any of these parade days from 2001 through 2004 have they ever sought administrative appeal using the city's permit appeals. They have never sought a writ of mandamus. Instead, they went straight to Federal court. They didn't even give the city time to act. They filed a request for a permit. We have an 18-day permit period to make the decision. They wait until the last minute to file the request. They filed this lawsuit 10 days out. They didn't even get a final – The record is clear, and Judge Reale was impressed. Yes. I don't want to lose track of the question and your answer. They got a request. Did they sue you during the period for acting on a permit? Absolutely. And then they got the permit? That's right. The day I got the complaint in my hands, my boss and I talked to Mr. Gaynor. We told him, this isn't final. This was – a mistake was made. This isn't a proper permit. We issued that night the proper permit. Excuse me. But did he get the permit he wanted? Yes. I thought he wanted to go in a certain street and wasn't allowed to. That's correct. That was the one – the initial complaint. That's the lawsuit that has. I understand it. Well, the initial complaint complained about fees being required and police monitor expenses and barricade expenses, things – a mistake that was made by a new officer handling the permits. We immediately clarified with Mr. Gaynor, you don't have to pay for the police. You don't have to pay for the barricades. All you have to do is – Not March 21. Not Haley Street. Not March 21. We did change the route. So it led to, at the time of the motions in front of the district court, the only issue was the parade route. But that was an issue. That's not no issue. That was an issue. Indeed. But that was done before they even gave us a chance to have an administrative appeal. It was done without a judicial review of a writ of mandate. So this – it's not as though this case is in front of the court fully fleshed out, with a superior court judge having an opportunity to look at the city's action, or even with the city administrator's opportunity to look at the action and make a final agency decision. But you're saying if they'd gone through the regular proceeding, we would find out why it was so important to them to use Haley Street and why it was so important to the city that they use a different street? I think the record would be much better, yes, Your Honor. And certainly some of these questions might be answered and the merits could be reviewed as readily, although, of course, our position is that on the merits, this Court has the statutes, the local ordinances, and the procedures in front of the court. Given the Supreme Court's subsequent ruling, the Thomas v. Chicago Park District and the companion case of McDonald v. Chicago Park District, those two cases have really taken the wind out of the merits arguments that they're bringing to this Court. And then the most recent decision that we've called the Court's attention to in this most recent Supreme – We're way over time, so try to wrap it up. Well, the very most recent judicial decision, the Supreme Court's decision that we brought to the Court's attention, just a minute, the Littleton – city of Littleton, Colorado, the Supreme Court has clarified again that in a content-neutral speech scheme, a parade permit scheme where you have a content-neutral generally applied ordinance, it is not necessary to have the most rapid, unusual, quick judicial review. So a major thrust of these complainant parties in this lawsuit here has been they didn't get a quick enough judicial review and they didn't get to use Haley Street. Well, certainly Thomas v. Park District has made clear that transportation and traffic concerns and routing for that purpose is well within the prerogative of an agency. And this recent case of city of Littleton shows that in content-neutral permit schemes, they don't have a right to unusual, speedy judicial review. And California's 1098.6 is more than adequate remedy. And in our case, we have a, what, a three-day turnaround. If you have a First Amendment permit request, you will get a final agency action within three days and you can take your writ and get in front of a State supreme – a State judicial review and get a decision within 50 days. California is doing a fine job of promoting free expression. So, you know, talking longer isn't going to necessarily get us to go your way. Thank you. Thank you. Thank you. No, it went way over time. Unless one of my colleagues wants to hear answers to this. Thank you. Next is Santa Monica food not bombs. Do you want to take a recess now or do you want to hear another one first? Okay. Do you want a recess? We finally finished. I don't mind doing this. I mean, I will want a recess. You want to hear this one first? Yeah. Santa Monica food not bombs.
judges: Kleinfeld, Wardlaw,berzon